Lawrence, J.
This action has been brought by Charles W. Stage, as' a taxpayer, on behalf of the city of Cleveland, against the auditor and treasurer of said city, the city solicitor, on request in writing, having refused to bring the same. The object of the action is to enjoin the said auditor and treasurer, respectively, from issuing and paying warrants to members of the police and fire departments of said city for salaries and compensation in excess of the amounts received by them prior to December 1, 1911, excepting as to such members of either of said departments as may have been appointed subsequent to December 1, 1911.
It is alleged in the petition, amongst other things, that on the 9th day of October, 1911, the council of said city passed two *420 separate ordinances to take effect December 1, 1911, by one of wbiób the salaries of the members of the police department, and by the other the salaries of the members of the fire department, were fixed at amounts in excess of the salaries theretofore fixed by the council by ordinances passed May 4, 1903.
And it is further alleged that the members of the police and fire departments were paid for the month of December, 1911, and the first half of January, 1912, at the increased rates so fixed by the sáid ordinances passed October 9, 1911; and that', unless restrained by this court, the said auditor will issue to said treasurer his warrants for. the payment of such salaries for the second half of January, 1912, in accordance with the provisions of said last mentioned ordinance and .in excess of the amounts fixed for and drawn by members of said departments prior to the first day of December, 1911, and that the said treasurer will pay the same.
As the ground for the relief asked, it is claimed that the members of said police and fire departments hold their respective positions during good behavior, and can be dismissed only for cause and after hearing on charges preferred; and that, in respect to the increased compensation provided, the ordinances passed October 9, 1911, are invalid, excepting as to those persons who may have been appointed since December 1, 1911, when said ordinances took effect, for the reason that it is provided by the laws of this state that the salary of .any officer, clerk or employe, when fixed by council, shall not be increased or diminished during the term for which he may have been appointed.
The defendants have demurred to the petition of the plaintiff, on. the ground that said petition does not state facts sufficient to constitute a cause of action or to entitle the plaintiff to the relief prayed for; and the case has been heard on this demurrer.
. .The question thus presented is, whether Section 4213 of the General Code, which provides that the salary of any officer, clerk or employe (of a city) shall not be increased or diminished during the term for which he was elected or appointed, applies to members of .the police and fire departments, .and prevents the council from changing the salary of any such member after his appointment.
*421 The first thing to be determined is, whether this question is an open one in this state.
In the case of State, ex rel Edward W. Spaller, v. the City of Painesville et al, 13 C.C.(N.S.), 577, the Circuit Court of Lake County, two judges sitting, sustained a demurrer to a petition in mandamus brought by the relator, in which it was alleged, in substance, that he was appointed a patrolman in the police department of the city of Painesville on October 12, 1903, under an ordinance by which his salary was fixed at $720 per year; that on December 18, 1907, the council of said city, by ordinance, increased his salary to $840 per year; that he continued in his position under his original appointment; that on January 12, 1910, the council passed an ordinance assuming to. reduce his salary from $840, as fixed by the ordinance of 1907, to $720 per year, being the amount at which his salary was fixed when he entered the service of the city as patrolman; that since the enactment of the ordinance of January 12, 1910, the city refused to pay him the difference between $720 and $840 per year; that there was due and payable to him from the city the sum of $90, which it wrongfully refused to pay him; and that there was money in the police fund of said city which could be properly and lawfully appropriated to the payment of his claim; and he prayed that a writ of mandamus be issued commanding the city, by its proper officers, to issue to him a warrant for the amount claimed to be due to him, and to pay such warrant.
A judgment having been entered in faAmr of the defendants on such demurrer, a petition in error was filed by the relator in the Supreme Court, and the latter court affirmed the judgment of the Circuit Court of Lake County, without report.
In its opinion the circuit court held that a city council has no power to increase or diminish the salary of a police officer, appointed under the civil service provisions of the municipal code, during the term for which he was appointed, which, it was said, is during good behavior; and that the ordinance of December 18, 1907, which undertook to increase the salary of patrolmen to $840 per year, was therefore void so far as it applied to the relator.
*422 It seems clear that the demurrer to the petition in that case might have been sustained on two grounds other than the one stated. In the first place, there was no allegation in the petition that an appropriation had been made by the council which was applicable to the payment of the .amount claimed. The allegation was merely, that there was money in the police fund of said city which can be properly and lawfully appropriated to the payment of said claim. A fund, derived from taxation or other sources, may exist, but, until an appropriation is made by the council, there is no authority or duty on the part of the auditor to draw a warrant for payment of a claim, and without such warrant the treasurer has no authority to make payment (Sections 3795, 3797 and 4285 of the General Code). The judgment on the demurrer to the petition, therefore, may well have been affirmed upon the ground that the relator had shown no right to a writ of mandamus. Chicago v. People, 210 Ill., 84 (seventh syllabus); Ampt v. Cincinnati, 8 N. P., 535.
The judgment may also have been affirmed on the ground that the council had power to increase or diminish the salaries of police officers. In that view, the ordinance passed by the council of Painesville on January 12,1910, would be perfectly valid, and, as the relator had received compensation in accordance with the terms of that ordinance, he had no valid claim to further compensation. It malees no difference in the result whether it be said that the ordinance of December 18, 1907, was valid, or that it was invalid. If it was valid, it was repealed by the ordinance of January 12, 1910; and if it was invalid, it never had any legal operation. In neither case could the relator have .any lawful claim based thereon.
So, as it seems to me, the action of the Supreme Court can not be considered as any controlling authority on the question here involved, because the case was not reported, and a decision on the point in controversy was not necessarily passed upon by the judgment of affirmance.
The opinion of the Circuit Court of Lake County is entitled to respect and consideration, but that court is not a superior court of this jurisdiction, and therefore, the ease mentioned is *423 not of authority except so far as the reasoning on which the decision is based appeals to the judgment of this court.
Before taking up the opinion of the circuit court, reference may properly be made to certain other sections of the' statutes which have a bearing upon the application of Section 4213 of the General Code.
By Section 4214, the council is required, except as otherwise provided, to determine by ordinance or resolution the number of officers, clerks and employes in each department of the city government, and to fix by ordinance or resolution their respective salaries and compensation.
By Section 4374 it is provided that the police department of each city shall be composed of a chief of police and such inspectors, captains, lieutenants, sergeants, corporals, detectives, patrolmen and other police court officers, station-house keepers, drivers and substitutes, as are provided by ordinance or resolution of council.
By Section 4377 it is provided that the fire department of such city shall be composed of a chief of the fire department and such marshals, assistant marshals, firemen, telegraph ánd telephone operators as are provided by resolution or ordinance of council.
By Section 4378 it is provided that the police and fire departments in every city shall be maintained under the civil service system, as provided, which requires appointments, thereto to be made from the lists certified by the civil service commission and in the manner specified.
By other sections provision is made for the suspension of the officers and employes in the police and fire departments for incompetence, gross neglect of duty, gross immorality, habitual drunkenness, failure to obey orders given by proper authority, or any other reasonable and just cause; for notice of the charges; for a hearing of the charges by the director of public safety, and a judgment thereon, which judgment, if the charge be sustained, may be either suspension, reduction in rank, or dismissal from the department. The right of appeal to the civil service commission is given to any person in either department who is suspended, reduced in rank or dismissed from the department by *424 the director of public safety. And it is farther provided that the members of the police and fire departments shall be dismissed only as provided by law.
By the statutes in force prior to the adoption of the municipal code in 1902, the city of Cleveland, as well as a number of other cities in the state, had separate pension funds for both the police and fire departments, which were created, held and invested as the statutes provided. The details were different, but in general members of these departments who became disabled while in the performance of duty, or who had been in the department for a certain number of years, could be retired from active service and .placed on the pension roll at various rates of payment, but less than the salaries previously received. In the case of the fire department of this city, it was also provided that any member discharged from the fire department except for dishonesty, intoxication .or a criminal act, after having served not less than twenty-two consecutive years, should be placed on the pension roll at six-sixteenths of his salary at the time of his discharge.
The present statutes authorize the establishment and maintenance of a fireman’s pension fund by any city having a paid fire department, and in such case a board of trustees is created, who have charge of the investment of the fund and make all rules and regulations for the distribution of the fund, including the qualifications of those to whom any portion of it shall be paid and the amount thereof. It is further provided that, upon the organization of such board of trustees, all funds and property of every kind held by the trustees of an existing fireman’s pension fund in the municipality, shall be transferred to the new board, and that all persons drawing pensions or entitled to them from an existing fireman’s pension fund shall be and -remain beneficiaries in the pension fund created under the present statutes, and shall receive such amounts and be subject to the rules and regulations adopted by the board of trustees. Similar provisions are made in respect to police pension funds.
While it may be, if the rules ,and regulations so provide, that persons .placed on the pension roll remain technically and in a *425 sense members of tbe department, for disciplinary purposes, such persons give np tbeir former positions and are retired from all active service, and, in lieu of the salaries formerly received, they are paid pensions. All this is accomplished not by virtue of any statutory provision fixing the terms of office or employment, but pursuant to rules and regulations which the trustees are authorized to adopt and which may vary in different cities and at different times.
In the opinion of the circuit court in the Painesville case only one authority is cited as bearing on the question involved here. On page 583 this appears in connection with the following language :
“But in view of the fact that a patrolman once appointed serves until he is removed for cause, it necessarily follows that he is appointed for a term, to-wit, for that period of time during which he is permitted to hold the office. People v. LaFevere, 21 Colo., 218.”
An examination of the case thus cited shows that it is not authority for the proposition asserted: The point decided in that case was, that judges of the district court elected at the regular sexennial election for judges hold their offices for six years, and those elected to fill a vacancy hold only for the unexpired them. The decision was reached from a consideration of several sections of the state Constitution, under which it was provided, in substance, that the term of office of district judges should be six years; that the terms of office of all judges of the district should expire on the same day; that vacancies occurring in the offices of judges should be filled by appointment by the Governor, and the judges so appointed should hold office until the next general election and until their successors thereat should be duly qualified.
It is very plain that the court was considering a fixed and definite term of office and not an indeterminate holding. The only question was, whether a judge elected to fill a vacancy was entitled to hold his office for the fixed term of six years, or whether he should hold it for the unexpired portion of such fixed term. In the opinion it is said (on page 229):
*426 ‘ ‘ By counsel on both sides much learning has been displayed, and many fine distinctions drawn, as to the meaning of ‘term,’ ‘office,’ ‘incumbent,’ ‘term of office,’ and ‘vacancy,’ but we consider the discussion neither very important nor helpful. It is sufficient to say that ‘term, of office,’ as used here, means the period or limit of time during which the incumbent is permitted to hold.”
It will appear, in either view of the case, that such time expired at a definite date.
In Mechem on Public Offices and Officers, Section 385, it is said:
“The word ‘term,’ when used in reference to the tenure of office, means ordinarily a fixed and definite time, and does not apply to appointive offices held at the' pleasure of the appointing power.”
There are many authorities to the same effect, among which are the following: Thorp on Public Officers, Section 303; 23 Am. & Eng. Ency. of Law, 404; State v. Galusha, 74 Neb., 188; People v. Brundage, 78 N. Y., 403 (407); State v. Twichel, 9 Wash., 530 (535); Cravatt v. Mason, 101 Ga., 246 (254); State v. Stonestreet, 99 Mo., 361; Somers v. State, 5 S. Dak., 321; People v. Turney, 31 N. Y. App. Div., 309; Lexington v. Rennick, 105 Ky., 779.
In State v. Massillon, 2 C.C.(N.S.), 167, it was held that a health officer appointed by the board of health under Section 2115, Revised Statutes, provided that he should serve-during the pleasure of the board, does not some within the purview of Section 1717, prohibiting the increase of salary of an officer during his term; and on page 168 of the opinion it is said:
“The word ‘term’ has significance, as we think, under that section of the statute. It simply means the limit, that is, during-the period that the office is limited, during that period, his salary shall not be increased. But in this case there is no limit fixed by law. * * * It is not a term, for the reason that there is no limit to it."
In the opinion of the court in Townsend v. Bougham, 55 N. J. Law, 380, it is said:
*427 "On the part of the respondent it is insisted that when a law clearly provides for the term of the continuance in office, as to when and how it shall terminate, that then the term of office is thereby fixed. But it is obvious that by this proposition, if it were adopted, the term of every office would be fixed, for it is believed that no office can be imagined with respect to whose term there is no regulation as to when and how it shall terminate. The term of an office means the period of time for which the incumbent has a right to it, so that if such period of time be not fixed, the term is not fixed. In case of an office held during the pleasure of another, the official term, that is, the continuance of the incumbency, is uncertain and unfixed until the mandate of removal has been issued."
The plaintiff here alleges in his petition that the members of the said police and fire departments hold their respective positions during good behavior, but that is a mere conclusion of the pleader. There is no such language in the statute. The statute authorizes removals for cause, in the mode prescribed. Some of such causes relate to misconduct, but the incumbents may also be removed for incompetency or for any other reasonable and just cause; besides, as has been seen, they may be retired under the pension laws. In any case the termination depends on some event or contingency which may occur subsequent to the appointment, but which may never occur. The time is thus not fixed, but is uncertain and depends on conditions not existing at the time of appointment. In effect, the tenure is until removal or retirement by the proper authority; and it seems to me that the case, in this respect, is not essentially different from a case where removal may be had without cause, so far as the question of a term is concerned. In both cases the position is held for an uncertain period, subject to termination by the action of some other officer or tribunal.
The assumption of the circuit court in the Painesville case that, because a patrolman once appointed may serve until he is removed for cause, it necessarily 'follows that he is appointed for a term, to-wit, for that period of time during which he is permitted to hold his office, if correct, would equally apply to one who may be removed without cause; and yet all the authorities *428 seem to agree' that the latter has no term of office. Mr. Mechem, in Section 448 of his work, says:
“The power of removal * * * may be absolute or conditional. It is absolute when it is vested in the unlimited discretion of the removing officer to be exercised at such time and for such reasons as the latter may deem proper and sufficient. It is conditional when the time, the manner or the reason is placed beyond the mere discretion of the removing officer."
There is one other matter of which, perhaps, I should speak. In the opinion in the Painesville ease it is said that the construction there adopted will conduce to the good of the service and to protect the officers of these two departments against unwarranted interference with their salaries by way of reducing them, and, on the other hand, will take away from such officers the temptation to be constantly using their influence and office to secure increased emoluments.
The perspective at Painesville is probably somewhat different from that at Cleveland, but-it seems to me unlikely that the council would ever be influenced by any motives so small as to make an unwarranted reduction in salaries, especially as it has no power to make or control appointments, and it ordinarily would have to deal not with a single individual, but with a body of men; nor does it seem reasonable to anticipate that the council, restricted as it is in the amount of taxes levied, would be induced by mere importunity to grant an extravagrant increase of salaries. The ordinances in question here show no such disposition, and I venture to say that common experience will show that city councils, in fixing salaries, are usually fair both to officers and employes and to the public. The general tendency in this city has been to make slight increase in salaries, from time to time, but no more than the growth of the city and the increased cost of living would justify.
If the contention of the plaintiff is correct, the result will be either that rates of compensation once fixed must remain unchanged as to all, whatever the change in conditions may be, or else that officers performing the same kind of duties will be paid varying rates of compensation, those longer in the service, and presumably the more experienced and efficient, being generally *429 paid less than the more recent appointees. I can not see how this situation will conduce to the good of the service.
From the nature of the tenure of the positions held by members of these departments, as shown by the statutes bearing on the subject, my conclusion is, that they 'are not appointed for a “term,” within the meaning of Section 4213 of the General Code; that, having no fixed or definite term, the restriction as to changes in salaries does not apply to them, and the council has power to increase or diminish their salaries after their appointment; and that the ordinances passed by the council of the city of Cleveland on October 9, 1911, are valid and apply to all members in said respective departments at 'the time said ordinances took effect, as well as to those subsequently appointed.
The demurrer to the petition will be sustained, and the plaintiff not desiring to plead further, the petition will be dismissed at plaintiff’s costs.